Next case is Appeal Number 2011-1301 CLS BANK v. ALICE CORPORATION Mr. Perlman, good morning. You may proceed. Good morning, Your Honor. May it please the Court. The District Court held that claims to computer systems and products and claims to methods of using a computer as an intermediary to exchange obligations in a particular way were all invalid as abstract ideas. Those rulings were erroneous and they should be reversed. I'd like to start first with the system claims. Alice's system claims all require a computer coupled to a data storage unit. Many of Alice's system claims require other hardware components expressly. These are concrete machines. This Court's defined a machine as a concrete thing consisting of parts and there's no dispute that is what these computer systems are. They're not abstract ideas. Wasn't there a machine in CyberSource? The machine in CyberSource, Your Honor, was a computer-readable storage medium. I think it may technically have been a manufacturer, but the distinction in that case was CyberSource held that the process that was embodied on the storage medium was a process that could be performed entirely in the human mind. The storage medium was defined completely functionally and all it did was house the process. It didn't perform the process. And so this Court determined that the storage medium under those circumstances should be analyzed as a process, not as a manufacturer. But what part of this cannot be performed in the human mind? None of our claims can be performed in the human mind because they all require the use of a computer to exchange the obligations. Our system claims, our claims to the computer systems themselves, which are machines under ALIPAT, and our process claims, as the District Court held, all require the use of a computer. Is that true for Claim 33 of the 479 patent? That is true. The District Court assumed for purposes of its decision that Claim 33 requires the use of a computer. The posture of this case is that despite the length of time it's been pending, we have been doing it in stages. And so the Court has not yet performed a claim construction analysis and a full-blown Markman proceeding. CLS brought their motion under Section 101 and the District Court entertained it on the assumption that Claim 33 requires the use of a computer. What if we disagree with that assumption? If you disagree with that assumption, the appropriate thing to do would be to remand for further Markman proceedings because Claim 33 requires the use of shadow records, which the specification makes clear are data files in an electronic storage system. And so if a computer were not required, some other machine or it would have to be a machine that was capable of manipulating electronic data files would have to be required by the claim in the context of the specification. Is there any reason, principled reason, to distinguish between method claims, system claims, or media claims in the context of this case? I think this Court's cases do make a distinction between machine claims and process claims. In the machine context, the issue that Allipat settled close to 20 years ago was a general purpose computer that was programmed to perform steps that were concededly purely mathematical calculations, were argued to be really a process and should be analyzed as a process and whether the process to be performed was abstract. What about the statements in CyberSource that implementing on a computer that which could be done otherwise by the human mind is not patently distinguishable? What CyberSource was referring to was if you had a process that could be completely performed in the human mind, merely reciting that the same process would be performed on a computer may not be sufficient. And I think that the circumstance that the CyberSource Court was envisioning was when you had a claim to something like a series of calculations and the computer was being used solely to perform calculations more quickly or more efficiently, which is not the case with respect to our computer in our process claims. Let me direct you to the method claim again, Claim 33 of the 479 patent. And again, why is that method any different from the method in Bilski? There are two reasons. First, Claim 33, as construed by the District Court for purposes of its opinion, requires the use of a computer to perform the process. Bilski conceitedly did not involve a computer or a machine of any kind. It was simply the process unadorned by a machine. Secondly, in terms of the specificity of the method to be performed, I do think Claim 33 is more particular than Claim 1 in Bilski, which the Supreme Court construed as simply directed to the concept of hedging. But I would say that the principal distinction... And what is the particularity? The particularity, Your Honor, is rather than... And CLS is characterized as an escrow arrangement. Rather than a classic escrow where two parties pay in to an escrow agent and when the escrow agent has both sides, it simply makes the exchange. Our Claim 33 does not operate that way. Our Claim 33 has a computer maintain shadow accounts that are distinct from the accounts where the real money is. The balances in the shadow accounts are updated at the beginning of the day to reflect those balances and then the transactions occur electronically in the virtual world over the course of a day and the only transactions that are allowed to go through are those that will not take the amount that would be left below the credit balance. That is a particular... And at the end of the day, our computer sends an instruction to the real world to make the adjustments in the real world accounts. It is a particularized way of using... Couldn't there just be an intermediary who does that same calculation back and forth during the course of the day? Well, not and fall within our claim because our claim requires that the computer be the intermediary and the computer is playing a significant role in this invention which really has nothing to do with the fact, admittedly, it does do calculations faster. Using the computer as the intermediary serves a variety of functions. Now the court did accept your proposition for purposes of this motion that a computer was involved but your blue brief has essentially one sentence that says somebody of skill in the art would know that a computer is involved even though it's not mentioned in Claim 33. I think that the reason that our expert below said that a person of skill would know that a computer is involved is because of the specification which is unlike many of these cases that have been arising recently under 101 devoted to an extensive description of the computer system that would implement the method and particularly the use of the term shadow records which the specification defines as an electronic data file in the data storage unit. And so in that context, Claim 33 has to require the use of a computer and the district court so found. But what the district court said is, yeah, the computer may facilitate or expedite performance of the method but the method itself can be performed without a computer. And that's like cybersource, correct? I mean, that's like what this court said in cybersource. I don't think so with respect, Your Honor, because in cybersource the analysis was of the method steps as claimed. Each step of the method was analyzed and none required the use of a computer. All of our method steps require the use of a computer to perform them. So I think that's a critical distinction between this case and cybersource. Frankly, you started with the systems claims. And I'm having, I think, those present the closest question with respect to all of your claims. So the question is, the district court distinguishes this from Allopath. And she says the 720 claims as written would wholly preempt the use of an abstract idea in any computer. And all you need is to compile it with a data storage unit. And that takes it out and that's insufficient and that's different than Allopath. I assume you disagree and if so, why? I do disagree with that because I think the point of Allopath was that when you take a general purpose computer and you program it or configure it to do certain operations, it becomes a new machine, not an abstract idea. And that the new machine is being defined not structurally in the classic sense, but that the programming is defining the structure of the new machine, which I think is the point that this court recently made in Ultramershal in reiterating Allopath. Is it your view that if you took a computer system for hedging risk by performing the steps that were found abstract in Bilski, that that would be patent eligible? If you claimed it as a computer system configured to perform those steps under Allopath, that is a machine. As this court said, that is apparatus, not mathematics. So that would be patent eligible, whether it would be patentable would be determined by the application of the other substantive patentability requirements of Title 35. So the implementation of an abstract idea in your view is not abstract. It becomes a specially programmed machine, even though it's simply performing an abstract idea? That was precisely the facts of Allopath. The operations that the computer was performing were simply a series of mathematical calculations. And the argument that the PTO made was this court should analyze it as a process by looking at the abstractedness of the mathematical calculations. And this court rejected that proposition and said if that were right, a general purpose computer would never be patentable. But more importantly, a claim to a programmed general purpose computer to perform operations is a machine, irrespective of whether the process that it is programmed to perform would be separately patentable standing alone. I'd like to reserve the balance of my time for rebuttal. Very good. Thank you, Mr. Cronin. Mr. Glassman. Good morning. Good morning, Your Honor. Mr. Glassman. Alice's claims, we submit, are not patent eligible because they are in fact directed to an abstract idea, under some cases recently issued a manifestly abstract idea of employing an intermediary to exchange an obligation if there is adequate value in accounts maintained for the parties. Well, how do you get, Ultramershal seems to me to be relevant here, even though it wasn't brought to the court's attention. Obviously, we were aware of it and your friend mentioned it. How is this different than Ultramershal? I mean, Ultramershal hung its hat on the complexity of programming. Why isn't that equally applicable in this case? In Ultramershal, the court, Judge Rader in his decision, found that there was actually an advance in computer technology there, addressing a particular problem relating to the use of Internet content. And I think in this case, clearly it's very different because the computer here is used really solely for speed and given the volume of transactions, which is very different from what you have in Ultramershal. Well, Mr. Perlman argues that following Allipat, that the computer is specially programmed and therefore becomes a patent-eligible machine. Is that not correct? I think that's not correct, predominantly based on the reasoning of this court in the CyberSource decision, where it commented on the way that Allipat should be interpreted. And the court in CyberSource, the panel, stated specifically that Allipat has never been read by this court as covering a situation where there was a purely abstract idea capable of being performed in the mind, which was then simply implemented on a computer. Is that a distinction that is present in this case? That is, that in CyberSource, the method was determined to be something that could be performed in the human mind? But in this case, the argument is that this is incapable of being performed in the human mind. It has to be performed on a computer. Well, in this case, we respectfully submit that the abstract idea, the underlying idea here, clearly can be performed entirely in the human mind. How can electronic transfers between two shadow accounts occur in the human mind? Obviously, an electronic transfer is electronic, but if you look at the claims here, you have an underlying concept which has the maintenance of accounts, which can be done in the human mind or on pencil and paper. Then you have a calculation simply to see whether or not there is enough fund, whether there are adequate funds, an adjustment of the account, and then the issuance of an instruction. Now, those steps can be performed completely in the human mind, very similar to essentially the three steps you have in CyberSource, where there was obtaining information about a transaction, constructing a map, and then utilizing the map. The district court's opinion relies upon CyberSource, the case below, Ultramershal, the case below, Fuzzy Sharp, the case below, and I think one other that was every penny. The last one settles out. Fuzzy Sharp gets reversed by this court for at least for claim construction and further consideration, so it was not affirmed. Ultramershal is reversed by this court. The only one you've got is CyberSource. So if we look at the authorities upon which the district court relied, they've sort of started to fall away, haven't they? No, Your Honor. CyberSource clearly has not fallen away. It's clearly, we believe, a persuasive, if not dispositive case, given the facts we have here. The Fuzzy Sharp, while it was sent back to the district court, it was only sent back because the district court had never considered the applicability of any test other than the machine or transformation test. But in the Fuzzy Sharp decision, I would say that so far as the machine or transformation test might still be applicable here, we believe that the Fuzzy Sharp decision, insofar as it went, in fact is dispositive of the idea that this, the claims here, would not pass the machine or transformation test. It is almost directly on point for that aspect of the case. If we go then to the next remaining portion of what would have to be addressed by the district court in Fuzzy Sharp, that would deal with the additional post-Bilski questions of is there another test? Is there something else we should look at? And we submit that under the varying decisions of this court, including CyberSource and Ultramershal and Research Corp, which had not been mentioned in the group here, that under any of the suggested tests that are proposed by those cases, these claims do not pass muster. They do not go through the course filter as it's been stated to exist in various of the recent cases. In terms of the machine or transformation test, again, the Supreme Court did not say it shouldn't exist. They said it should, in fact, apply in most cases and there would be very few cases to which it wouldn't apply. So we think it clearly does apply here and that's, again, I think determined by the court's decision in Fuzzy Sharp. In terms of the question of preemption, which is another aspect of, well, if there's an underlying method that is considered to be abstract and now we have tacked on to that method computer language, we have a question of, well, does that computer language result in the claims as a whole preempting the use of the underlying ideas as a practical matter? Is it appropriate for us to, shall we say, look past the claim language and evaluate these inventions on the basis of what the underlying idea is? I think, Your Honor, the answer is twofold. First, it is appropriate to look to the underlying idea. Every invention has some underlying idea and you could just punch through all sorts of specific limitations and say, well, at its heart, this invention that has cams and levers and gears is all about how to open a door. I think the answer, Your Honor, is that you can and should look at the underlying idea and that is what CyberSource says, but that is not the end of the inquiry. Of course, one can look to the underlying concept to understand the claims better, but then one can look as to whether any additional language that's in the claims, and we do have additional language here relating to the computer, at least in the system claims, whether any additional language, whether that is inserted really just for speed, that's the only purpose of the computer, in which case it would run afoul of this Court's decision in the surf technology case, that that would not make it patent eligible, and also we would look at the question of whether the additional language, whether that results in, as a practical matter, a preemption of the use of the underlying idea. So you cannot look just at the underlying idea. You mentioned preemption. That's another question I have in my mind. We've got all these concepts floating around, abstract ideas, fundamental principles, something that's too broad, something that preempts. Every claim preempts something. So are we talking about rats? No, I think we're talking about whether there is an abstract idea whose use is preempted. So every claim does not have an abstract idea, which is then, which is subject then to these tests. Obviously, if you simply had an automobile, I mean, I don't think that's an abstract idea.  I feel if some sort of an electric car would preempt the use of that kind of concept, but that's not the same as what's out there. In its essence, isn't the idea that we're looking to see whether there is some fundamental principle that might be preempted, something so fundamental that would hinder future inventors from developing ideas, sort of the distinction between Morse's claim that was directed to electromagnetism to send information and his other claims that were more specific and found patent elegy? I think that question, Your Honor, has been resolved by a combination of Bilski and CyberSource. The reason I say that is a citation to, again, this court's decision in CyberSource, wherein it quoted and therefore reaffirmed the language from the Bilski Federal Circuit opinion that, quote, the application of only human intelligence to the solution of practical problems is no more than a claim to a fundamental principle. So that the question of what is fundamental doesn't mean it's just E equals MC squared. What is fundamental is also a mental concept, or in this case an application of economic principles, or something we've likened to a two-sided escrow. The question of what is fundamental does not mean the law of gravity. But in your court, Bilski says allowing petitioners to patent risk hedging would preempt the use of this approach in all fields. How is that analogous to what's going on in your case? That's analogous here, Judge Gross, because the use of this concept of employing an intermediary for exchange of an obligation if there's enough money in the accounts, as the district court observed here, that concept can be applied in many, many fields. And if one looks to the dependent claims But is that really what is claimed? I mean, your friend would say that what is claimed is not any use of an intermediary, because there could be a lot of ways that an intermediary could monitor funds or hold funds. What he's saying is that the only thing that's claimed is this specialized shadow account. What I would say to that, Your Honor, first, a shadow account is really just an account, another kind of record. And the claims here deal with any kind of account. They have accounts, they have debit credit records, they have a shadow account. But I think there's perhaps a more fundamental answer to Your Honor's question, which is if there may be different abstract concepts which could be applied in an economic field. It may be you could just have something that was not quite the escrow arrangement we have here, but something where someone just came in and said, I'll give you money if you give me money, say, in a different currency or something like that, without involving an account established that reflects whether or not you have enough money. But perhaps there could be another patent application that would claim to have another abstract concept, another way of exchanging an obligation. That doesn't lessen the impact of the law here. If these claims have an abstract concept and as a practical matter, the claims as drafted, and we've seen the progression of the draftsmanship from no recitation of a computer to electronic implementation to the word computer. If these claims have an abstract concept and that concept is effectively preempted by the way the claims were drafted, that should end the matter. So you're saying these claims preempt every possible way of using an intermediary in a two-party transaction. I have to say the use of just saying it that simply is probably a bit oversimplistic because we're talking about the use of an intermediary to exchange an obligation where we have the maintenance of independent accounts and an assessment of the other's adequate value. You have several steps in there, but all of these steps can be done completely in the human mind and that concept as embodied in the steps of the claims is an abstract concept. It's something that can be done, albeit much more slowly, by the ladies and gentlemen in this courtroom. But here we have system claims and that's a bit troubling. I mean, we've got some precedent that deals with method claims tied to a computer and we still say, okay, that's an abstract idea. We can do that under 101. But here we have, and your friend argues, you know, we've got a machine. We've got a claim that recites a computer system that performs the method. Why doesn't this make the result different? I mean, there are a lot of things in patent law that we say it's all a matter of how you draft them and the way you draft them. So why isn't by drafting this as a systems claim sufficient to put it in the machine category? Well, because, again, by putting it on a computer. They're claiming the computer system, right? They're claiming the computer system, but that issue, we believe, is addressed by a Supreme Court decision at first in Benson where you really do have, you did have there an abstract idea. Actually, it was an algorithm in Benson that was implemented on a computer, albeit maybe an earlier stage computer at the time that Justice Douglas was on the court. He had shift registers mentioned in the claim that was on a computer. And that's where the Supreme Court initially said just putting something on a computer, that won't do it. Shouldn't we distinguish between a method claim that's tied to a computer and then a systems claim, which is claiming of the computer system? No, Your Honor, you shouldn't. And the real reason for that is that if you end up distinguishing on that ground, then what will happen is anyone can simply go and take one claim and just convert it to the other form. And that is the type of draftsmanship that we suggest was counseled against, again, by the Supreme Court, both in Benson and then again in the Fluke case. That it would encourage pure draftsmanship to try to get around this. And we suggest that this issue was addressed, again, by CyberSource in the sense that CyberSource had method claims and it had computer-readable medium claims. It did not have an actual computer system claim, but had those two. But the language of CyberSource clearly states that the character of the underlying invention, the character of it, if it's abstract, is not changed by the fact of whether you put it on a computer or a computer-readable medium. And a computer-readable medium is really nothing more than it's a piece of equipment or a disk, for example, but it has software which programs the computer. So it really, in effect, has the same, absolutely the same function. There really should be no difference. Mr. Glassman, even if we agree with you that the idea of a two-way escrow account is an abstract idea, what about the presence in both the method claims and the system claims and the media claims, for that matter, of the fact that there are these first and second shadow accounts? The shadow accounts are simply a type of account, one account shadowing another, which is really what you have if you have an intermediary that is essentially dealing with the two parties who are seeking something like an escrow. Why isn't that an application of the fundamental idea in a particular way? I submit it's not an application. It is in itself an abstract idea. Whether you call it a shadow account, whether you call it a record, it doesn't make any difference. It's just an account, and it's an account maintained by a third party. And that's a… You keep adding layer upon layer of different things to the discussion. Where do you stop calling things abstract and start calling them particular ideas? My answer, Your Honor, is whether it can be performed in the mind, whether this can be performed by a human being, either in the mind or with a pencil and paper. And clearly this can, and it doesn't make any difference what name you attach to the account. So you think that's the test? I think… Whether it can be performed in the human mind. In the human mind or with a pencil and paper. And then whether the addition of the computer language, such as it might be, does anything more than allow it to speed up the process, which is what happens here. And whether it is a practical matter, it preempts. The only thing I would add, Your Honor, is that, again, the key distinction between this and, again, the research corp and the ultra-mercial case that's been mentioned over and over again. The computer here simply is there to allow this to be done in greater speed. It really performs nothing else. There is no advance in computer technology here. The Alice does not claim to have invented a computer. It doesn't claim to have an advance in computer technology of any sort, which distinguishes this from all, really all of the cases, whether it be ultra-mercial, research corp, Alipad. Alipad was a rasterizer, which something that had helped one to better visualize data in a computer. So all of those cases involve advances in computer technology. This simply does not. Thank you. We have your argument. Thank you, Your Honor. Mr. Perlin, if you need a few more minutes, since Mr. Glassman ran over, we'll give you some extra time. Thank you, Your Honor. Let me start with the last thing that Mr. Glassman said, that the only reason for the computer is for speed. That is incorrect. The undisputed evidence before the district court from Mr. Ginsburg, which is in the record at appendix pages 1013 through 1015, is that the computer is not there solely for speed, but rather that this is an automated method that we have claimed. And that method only works as intended when you do it on a computer. And there are several reasons for that. Do you disagree with his read, as I understood it, of Ultramershal, which is the level of intricacy and complexity was tested against what constitutes an advancement in computer technology? And if you agree with that, then how is what you're doing in these claims, how do we know that it's an advancement in computer technology? I disagree with that characterization of Ultramershal. Ultramershal noted that the invention would require complex programming, as would this invention. But the point of Ultramershal, as I understand it, was that the claim was not to the abstract idea of using advertising as currency, but a particular series of steps implemented by a computer to accomplish a particular end, which is the same thing we have in this case. But Ultramershal does say, far from abstract, it concludes advances in computer technology, both hardware and software, drive innovation in every area of the scientific. And that was in connection with the result they were reaching here. So it seems to me that we're talking about advances, right? I think that what that language from Ultramershal is not referring to some advancement in making a computer better, which is what I understood Mr. Glassman to mean by an advance in computer technology. I understood that language in Ultramershal to be saying that the computer is a very diverse invention that's been very important. And coming up with new ways to use a computer to accomplish real world ends are real advances, because that's what Ultramershal was about. And that's what the computer did there, not because Ultramershal wasn't about a faster processor or a different way to construct a computer. It used a general purpose computer, just like we use a general purpose computer, configured a particular way to solve a real world problem, just as we do. And if you were to take this court's Ultramershal case and this court's CyberSource case and put them on the table, we are much closer to Ultramershal than we are to CyberSource. CyberSource was a series of method steps that the court, in reading the actual steps of the method, not reading out a machine because there was no machine, said those actual steps could be performed entirely in the human mind. And simply reciting the same thing on a computer disk that didn't perform the method, but just housed it, didn't change the analysis. You still treat it as a process. Ultramershal was a series of steps in the e-commerce area that were implemented on a computer. Each of those steps, if you were to take away the computer, a person could have a piece of media, have an advertisement, interact with a customer in the same way as the Ultramershal claim without the computer. But the analysis this court undertook wasn't, is it impossible to do something like this claim without a computer? The analysis this court undertook was, the use of the computer with this particular method is not an abstract idea. It's a particular way of doing something to solve a real world problem. And that's what we've done here. Let me just focus, I think, on the disconnect between Mr. Glassman and myself in terms of analyzing our method claims. On the system claims, I would submit that Allopat controls it. On our method claims, Mr. Glassman looks at our claims, then abstracts them up to a higher level of generality and says, that's really what you're preempting. The district court identified this concept as the idea of using an intermediary to facilitate a simultaneous exchange in order to minimize risk. That may well be an abstract idea, but that isn't what we claim. We claim a particular way of doing that, and we require a computer, we require shadow accounts, we require a particular series of steps that the computer performs, and someone who wants to exchange obligations with an intermediary, either without a computer or with a different kind of computerized system, is not foreclosed by anything we have done. I see my time has elapsed, Your Honor. Do you have some additional time if there are any other points you'd like to make? I'd just like to sum up briefly if I could. As to our system claims, they are a claim to a computer system itself programmed by software to accomplish a particular end. That is indistinguishable from the claim that this court in Allapatt found to be a machine, not an abstract idea. As to our method claims, the district court assumed that they are required to be performed by a computer. That computer is not there solely for speed. The undisputed evidence is that the computer, while it makes calculations faster, this invention is not about calculating some number. This invention is about a real-world application that only as a practical matter works with the computer. For that reason, the district court's ruling should be reversed as to all of our claims. I thank the court. Thank you very much. Thank you, Mr. Perlman. Thank you, Mr. Glassman. The case is submitted.